**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BILL SALTER ADVERTISING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0081-WS-B** |
| | ) | |
| **CITY OF BREWTON, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction (doc. 6) and defendant's Motion to Stay Consideration of Plaintiff's Motion for Preliminary Injunction (doc. 11).[1]

**I.     Background.**

In September 2004, Hurricane Ivan made landfall on the Gulf Coast, leaving a trail of devastation in its wake.  Among the casualties of this historic weather event were four outdoor advertising signs owned by plaintiff, Bill Salter Advertising, Inc. ("Salter"), within the police jurisdiction of defendant, City of Brewton, Alabama (the "City").  These billboards sustained significant wind damage in the storm.  In the aftermath of the hurricane, the City, citing concerns for public safety (in that future storms might cause sign faces to become airborne, endangering pedestrians and motorists alike) and the concomitant need to revisit technical aspects of its sign ordinance ("Ordinance") such as wind load, imposed a temporary moratorium on the construction or rebuilding of billboards within the City on June 28, 2005, while these safety considerations were studied.[2]  All indications in the parties' filings are that this ostensibly

---

[1]     Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

[2]     Defendant's memorandum of law recites the relevant date as being June 28, 2006. (Defendant's Brief (doc. 10), at 3.)  However, both affidavits cited by the City in support of that fact list June 28, 2005 as the date on which the moratorium went into effect.  (King Aff., ¶ 4;

temporary moratorium remains in place today, some 22 months after it was first imposed, and that the City has not enacted a new sign ordinance to address the safety concerns that animated the moratorium in the first place.[3]

In July 2006, Salter submitted application packages to the City seeking permits to erect nine new billboards in the City's police jurisdiction.  The next month, a City official orally notified Salter that all nine applications were being denied because of the moratorium "until the new sign ordinance is in place."  (McCurdy Decl., ¶ 10.)  A follow-up letter from the City to Salter explained that the applications had been denied because "Brewton's Sign Ordinance presently in effect prohibits the issuance of permits for new Off-Premise signs of [*sic*] billboards."  (*Id.*, ¶ 11 & Exh. A.)[4]  Within weeks, Salter submitted applications for administrative appeal/variance with respect to each of the denied applications.  In response, the City notified Salter of certain information and fees that were necessary for the appeal/variance requests to proceed.  Although Salter contends that the need for much of this information was not specified in the Ordinance or any other applicable regulation, and that the process was both expensive and onerous, it submitted the requisite information and fees in November 2006.  Two

———————

Diurno Aff., ¶ 5.)  Faced with this discrepancy, the Court assumes that the affidavits are accurate and that the 2006 date set forth in the brief is a typographical error.  A further point of confusion in the City's filings concerns the precise nature and scope of the moratorium, which does not appear to have been memorialized in writing.  The City's brief couches it as a moratorium on "the erection of new billboards" while two City officials submit affidavits that the moratorium related to "rebuilding of signs and billboards."  (Opposition Brief, at 3; King Aff., ¶ 4.)  As plaintiff's evidence is that the moratorium has been used for both purposes, the Court assumes that it encompasses both the construction of new signs and the rebuilding of damaged signs.

[3]     Although not directly relevant to the Motion for Preliminary Injunction, Salter requested permission to rebuild or repair the four damaged billboards sometime in 2005, and was eventually permitted to repair them in late 2006, subject to the proviso that sign faces would be limited to 75 square feet, a smaller (and less profitable) size than they had been previously.

[4]     Neither the letter nor the City's filings in this matter identify a particular provision of the 9-page Ordinance that implements such a ban, and Salter now protests that the Ordinance contains no such prohibition.  On its face, however, the copy of the Ordinance submitted by Salter herein states as follows: "No new off-premises signs or billboards will be permitted in any zone ...."  (Ordinance, § 10.775(7).)  Given this unambiguous language, and for the reasons discussed *infra*, the Court cannot agree with Salter's repeated assertion in its filings that the City engaged in a "wrongful interpretation" of its Ordinance in this respect.

months later, on January 22, 2007, at a hearing, the City's Board of Zoning Adjustment denied Salter's appeal/variance requests.

On February 2, 2007, Salter initiated this action by filing the Complaint (doc. 1) against the City alleging various constitutional deprivations.  In particular, sounding in 42 U.S.C. § 1983 and the Alabama Constitution, the Complaint alleges that the City's purportedly temporary moratorium on all signs requiring a permit is unconstitutional under the First Amendment; that the City violated Salter's procedural and substantive due process rights in delaying and otherwise obstructing Salter's attempts to repair hurricane-damaged signs; that the City's sign ordinance violates the First Amendment because its permitting requirement is an invalid prior restraint that fails to contain minimum procedural safeguards, it affords the City virtually unfettered discretion in determining whether or not to issue a permit, it includes content-based restrictions that impermissibly favor commercial speech over noncommercial speech, it does not directly advance a substantial government interest in a material way and is not narrowly tailored to support the governmental interests asserted, and it unduly burdens the freedom of citizens and property holders to speak; and that the City's sign ordinance violates the Fourteenth Amendment by denying Salter equal protection under the law in favoring certain entities' speech at the expense of others'.  In its Complaint, Salter seeks multiple forms of relief, including monetary damages and an injunction prohibiting the City from enforcing the moratorium and the Ordinance.[5]

On February 22, 2007, some three weeks after filing its Complaint, Salter filed its Motion for Preliminary Injunction, requesting that the City be preliminarily enjoined from (a) "misinterpreting its Sign Ordinance to preclude all new outdoor advertising signs" and (b)

---

[5]     This action is not the only current litigation concerning the City of Brewton's sign ordinance.  In fact, less than two weeks ago the Supreme Court of Alabama affirmed the trial court's denial of another company's petition seeking to enjoin the City from removing four of its outdoor signs for noncompliance with the Ordinance.  *See Studio 205, Inc. v. City of Brewton*, ---So.2d ----, 2007 WL 1098551 (Ala. Apr. 13, 2007).  Additionally, research confirms that Salter and the City have skirmished before over billboard regulations, as Salter previously sued the City of Brewton in 1994 claiming that a billboard moratorium in effect at that time was discriminatorily applied.  That legal challenge failed.  *See Bill Salter Advertising, Inc. v. City of Brewton*, 658 So.2d 449 (Ala.Civ.App. 1994), *cert denied*, 658 So.2d 451 (Ala. 1995).

"enforcing its Sign Ordinance and Moratorium." (Motion, at 2.) With its 31-page memorandum of law (exceeding, without leave, the 30-page maximum prescribed by Local Rule 7.1(b)), its supporting affidavits and exhibits, and its thicket of potentially far-reaching legal arguments, this Motion bears a striking resemblance to a summary judgment motion, rather than an emergency motion for preliminary relief under Rule 65 until such time as a final determination on the merits can be made. Despite its rather unorthodox procedural posture, the Motion for Preliminary Injunction has now been briefed and is ripe for disposition.[6]

## II.    Defendant's Motion to Stay.

Antecedent to considering the Motion for Preliminary Injunction, the Court will take up the City's Motion to Stay Consideration of Plaintiff's Motion for Preliminary Injunction (doc. 11). In that Motion, the City accuses Salter of setting an "evidentiary trap" by attempting to force the City to defend itself against a Rule 65 motion despite a "virtually barren" evidentiary record in which neither initial disclosures nor formal discovery have taken place. (Doc. 11, at 2.)[7] According to the Motion, the City is at a strategic disadvantage because it has not been able

---

[6]        The Court takes the Motion for Preliminary Injunction under submission without an evidentiary hearing. The law is clear that a hearing is required on such a motion only if there are contested issues of fact that require credibility determinations. *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) (observing that an "evidentiary hearing is not always required before the issuance of a preliminary injunction" unless "facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue") (citations omitted); *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (opining that where little dispute exists as to raw facts, and dispute revolves around inferences to be drawn from such facts, it is left to district court's sound discretion to determine whether an evidentiary hearing is necessary by balancing the interests of speed and practicality against those of accuracy and fairness). Review of the parties' submissions reveals no material disputes as to raw facts and no bitter contest of facts. The Court finds, after balancing the interests of speed and practicality against those of accuracy and fairness, that no hearing is needed here. This conclusion is bolstered by the fact that no party appears to have requested a hearing in its submissions relating to the Motion for Preliminary Injunction.

[7]        Defendant does not mince words in ascribing a nefarious purpose to plaintiff's conduct both before and during this litigation. Indeed, the City theorizes that Salter filed its permit applications for the nine new signs for the sole purpose of triggering litigation that would allow Salter to assault the Ordinance in its entirety, mounting a "shotgun-style facial challenge[]" that "attack[s] every conceivable provision in an ordinance," with the intent of

to conduct any discovery and therefore cannot sufficiently and adequately respond to the Motion for Preliminary Injunction without conducting, at a minimum, the following discovery: (i) the depositions of all individuals listed in Salter's nine billboard applications, (ii) the depositions of the two declarants who offered declarations in support of the Motion for Preliminary Injunction, (iii) production of all of Salter's documents pertaining to their applications, and (iv) a Rule 30(b)(6) deposition of Salter.  (*Id.* at 6.)  The City therefore asks that plaintiff's Motion for Preliminary Injunction be stayed until such time as this sweeping "preliminary" discovery has been conducted.

Although the City argues that there are "significant factual ... issues that need to be addressed" before the Rule 65 Motion may be decided, it does so in conclusory terms, largely omitting identification or explanation of what those factual issues are and why they are germane to Salter's request for a preliminary injunction.  (Motion to Stay, at 6.)   At best, defendant justifies its request for extensive preliminary discovery (which would almost certainly contemplate both considerable expense to the parties and considerable delay to these proceedings) by stating that it needs to inquire fully into the circumstances surrounding the submission of the billboard applications, that it requires discovery on the question of irreparable harm, and that factual investigation is needed to determine whether Salter has any genuine interest in noncommercial speech for purposes of standing.  The City cites no authority that has allowed such wide-ranging discovery as a prerequisite to ruling on a motion for preliminary injunction in a First Amendment billboard case.  More importantly, the City's position overlooks the fact that Salter's Motion for Preliminary Injunction turns on pure questions of law relating to a predominantly facial challenge to the Ordinance's constitutionality, as to which no preliminary discovery is reasonably necessary.  *See, e.g., Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1274 (11th Cir. 2005) (observing in First Amendment sign ordinance case that the plaintiff's claims raised purely legal questions as its constitutional challenge to that ordinance was "facial rather than as applied, so that our resolution of the legal questions is only minimally intertwined with the facts"); *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir. 1994) ("the issuance of a preliminary injunction in the context of free speech turns solely on

---

leaving the City bereft of any billboard regulation of any kind.  (*Id.* at 5.)

whether the challenged ordinance violates the First Amendment") (citation omitted).

The topics on which the City professes to have need for preliminary discovery do not have any apparent bearing on whether the Ordinance is constitutional or unconstitutional. To be sure, the question of irreparable harm is in play for Salter's Rule 65 Motion; however, as explained in Section III.D.2., *infra*, the irreparable harm element is satisfied as a matter of law in this context, without the need for factual examination as to how Salter has been harmed by the denial of the permits. Moreover, while the Court appreciates the City's position on Salter's standing, particularly as to aspects of the Ordinance which were not used as a basis for denying the permit requests, no discovery is needed here before a preliminary determination as to standing may be made. As to aspects of the Ordinance not used as a basis for denying the permit applications, the question of standing is purely legal and no discovery is needed. (*See* Section III.F.4., *infra*.) As to Salter's standing to challenge stated bases for denying the applications, it is uncontroverted that Salter did submit nine permit applications for new signs and that the City denied both those applications and Salter's ensuing requests for variances, for the stated reasons of the moratorium and the off-premises sign prohibition in the Ordinance. To the extent that the City insinuates that the nine permit applications were a mere sham concocted by Salter to pave the way for a full-scale, broadside attack on the Ordinance in its entirety, the City will not be afforded leave to conduct preliminary discovery in what is, in effect, a fishing expedition seeking evidence to support a facially implausible theory. It strains credulity to suggest that Salter did not legitimately seek permits for the nine new requested signs, but that it was instead using those applications to bait the City into denying the permits so as to confer standing on Salter to launch a comprehensive legal offensive aimed at striking down the entire Ordinance.[8]

The City further maintains that preliminary discovery is necessary "to insure that a complete and thorough record will be available for appellate purposes." (Motion to Stay, at 8.)

---

[8]     This is not to say, of course, that the City will be forbidden from exploring this topic and attempting to develop that theory during merits discovery. It is to say, however, that this theory is sufficiently remote and unlikely that this Court will not postpone ruling on a motion for preliminary injunctive relief alleging irreparable harm to allow defendant to investigate that unlikely possibility now. This subject will certainly be fair game once merits discovery commences.

In that regard, the City expresses concern that if the Rule 65 Motion is denied, Salter will seek interlocutory appellate review, which could result in a final disposition of the case by the Eleventh Circuit without further evidentiary development. The City is correct that appellate courts have shown some propensity to decide the merits of a case on interlocutory appeal from a ruling on a preliminary injunction motion, provided that certain conditions are satisfied. *See Solantic*, 410 F.3d at1272-74 (making final determination on the merits in First Amendment sign case on interlocutory appeal from denial of preliminary injunction, because facts were straightforward, record required no expansion, and legal issues had been fully briefed and cogently presented); *Siegel v. LePore*, 234 F.3d 1163, 1171 n.4 (11th Cir. 2000) ("[W]e recognize that an appellate court under some circumstances may decide the merits of a case in connection with its review of a denial of a preliminary injunction."). This concern is insufficient to warrant a preliminary discovery period here for two reasons. First, the City has failed to identify any respect in which the record may properly be deemed inadequate to allow resolution of the issues presented by Salter's Motion. If the existing record is adequate for this Court to pass on preliminary injunction issues (which it is), then it is also sufficient for purposes of any interlocutory appellate review that may occur. Second, if the City fears that the specter of *Solantic* may prompt the Eleventh Circuit to enter judgment on the merits on interlocutory appeal, then its remedy is not to receive unnecessary, time-consuming preliminary discovery now (at the expense of timely, efficient ruling on the Rule 65 motion), but is instead to distinguish the *Solantic* line of cases on interlocutory appeal, if this case ever reaches that point, so as to convince the Eleventh Circuit to stay its hand as to the merits of the dispute until after a reasonable discovery period and final disposition in District Court.[9] To delay these proceedings

---

[9] The *Solantic* court delineated two kinds of cases on interlocutory appeal from denial of preliminary injunction: those in which the district court's ruling rests solely on a premise as to the applicable law, with the facts being either established or of no controlling relevance; and those in which the law is undisputed but the probability of success on the merits depends on facts likely to emerge at trial. *Solantic*, 410 F.3d at 1274. In the first category of cases, ruling on the merits may be appropriate on interlocutory appeal, but in the second category it is not. *Id.* Nothing will prevent the City from arguing on interlocutory appeal (if one is filed) that this case falls in the second *Solantic* category, that the facts are not simple and straightforward, that the record reasonably requires expansion, and that the legal questions are inextricably intertwined with disputed or undiscovered facts. As such, the *Solantic* decision in

-7-

so that defendant may secure discovery that may be useful if (a) there is an interlocutory appeal, and (b) the Eleventh Circuit decides to issue a merits ruling, would be to delay plaintiff's Rule 65 motion based on speculation and conjecture.  This the Court will not do.

Furthermore, the City's protestations that, without preliminary discovery, it is unable "to sufficiently and adequately respond to the Plaintiff's Motion for Preliminary Injunction" (Motion to Stay, at 5-6), are undercut by the City's submission of a 24-page memorandum of law (doc. 10) and accompanying exhibits in opposition to Salter's request for preliminary injunction.  That memorandum of law reveals no specific subjects therein on which the City purports to require discovery before being able to effectively rebut Salter's request; rather, the City states only in general terms that its efforts to oppose the Motion have been stymied because "much of the argument relies on facts that are much in dispute" and the City has not yet had the benefit of discovery.  (Opposition Brief (doc. 10), at 15.)  What categories of facts are disputed or unknown to the City?  How are those facts linked to the specific narrow legal questions relating to Salter's likelihood of success on the merits?  The City does not say.  At some level, the proof is in the pudding.  As the City has filed a lengthy opposition brief and exhibits, and as nothing in its opposition brief would support a conclusion that the City is unable reasonably to defend against the legal issues presented in Salter's Motion for Preliminary Injunction as this case is presently postured, the Court cannot credit the City's blanket assertion that it is unable, without the benefit of discovery, effectively to counter the Rule 65 motion.

Finally, the City's proposal that plaintiff's Motion be simply placed on hold for an indefinite period of time to enable discovery to be conducted ignores the time-sensitive nature of plaintiff's request.  *See, e.g., Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127-28 (11th Cir. 2005) (observing that a preliminary injunction is an extraordinary remedy requiring a showing of, *inter alia*, irreparable injury unless the injunction issues immediately).  Salter's

---

no way militates in favor of granting the City extensive preliminary discovery now at the expense of a timely, efficient resolution of the pending Motion for Preliminary Injunction, inasmuch as the City will have ample opportunity to explain on interlocutory appeal (if any) why this case falls outside the first category of cases described in *Solantic*.  *See Siegel*, 234 F.3d at 1171 n.4 (finding that case fell into second category of cases, such that it would be inappropriate for appeals court to reach the merits of plaintiffs' claims because of the absence of the necessary evidence by which to do so).

Motion contends that it is incurring irreparable harm on an ongoing basis because of the City's actions. To stay that Motion for untold lengths of time to allow preliminary discovery is to run the risk of condemning Salter to months of unremediated, unremediable harm. The whole point of the Rule 65 remedy is that, in certain narrow contexts, justice delayed truly is justice denied. Salter having invoked that remedy, this Court will not cavalierly set that request to one side indefinitely to allow the City to conduct discovery that it has not shown to be reasonably necessary to its ability to defend against said motion for preliminary injunction. To do so would be antithetical to the remedial purposes of Rule 65 and would run an unacceptable risk of perpetuating the harms that the rule is designed to prevent.[10]

For all of these reasons, defendant's Motion to Stay Consideration of Plaintiff's Preliminary Injunction (doc. 11) is **denied**.

## III.     Plaintiff's Motion for Preliminary Injunction.

### A.     *Legal Standard.*

To be eligible for preliminary injunctive relief under Rule 65, Fed.R.Civ.P., a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-

---

[10]     In a similar vein, the undersigned cannot agree with defendant's contention that "[t]here is simply no urgency to consider" whether preliminary injunctive relief is warranted in this case and that the legal issues raised by Salter's motion should simply be deferred for resolution on summary judgment. (Opposition Brief, at 23.) Let's be clear: Salter is alleging a deprivation of its First Amendment rights by operation of a sign ordinance and moratorium by the City of Brewton. If that claim is meritorious, then plaintiff is suffering irreparable harm on a daily basis. *See, e.g., KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (opining that "it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (citation omitted). Simply put, then, Salter's allegation that it is suffering a First Amendment deprivation creates urgency, and obliges this Court to consider and rule on the Motion for Preliminary Injunction as expeditiously as circumstances reasonably allow. As such, plaintiff's claims clearly are appropriate for preliminary adjudication under the Rule 65 rubric and will not be deferred until after the close of merits discovery many months hence.

26 (11th Cir. 2005); *Siegel*, 234 F.3d at 1176.  In this Circuit, "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites."  *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted).

As noted, a prerequisite of preliminary injunctive relief is that a plaintiff must show a substantial likelihood of success on the merits.  Indeed, "[t]he requesting party's failure to demonstrate a substantial likelihood of success on the merits may defeat the party's claim, regardless of its ability to establish any of the other elements."  *Haitian Refugee Center, Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir. 1995) (citation omitted).

In response to Salter's 20 pages of detailed legal argument articulating why it believes it has a substantial likelihood of succeeding on the merits in its First Amendment challenges to the Ordinance and moratorium, defendant is virtually silent.  To justify its failure to rebut plaintiff's legal arguments on these points, the City offers two responses.  First, it says, Salter's contentions about the likelihood of success on the merits rest "on facts that are much in dispute." (Opposition Brief, at 15.)  However, the City offers this blanket statement without identifying where those factual disputes lie.  As already explained *supra*, whether these provisions of the Ordinance comport with the First Amendment is a purely legal inquiry in many respects.[11]  For example, does the Ordinance's ban on new off-premises signs require factual development before an assessment can be made as to whether it is substantially likely to be unconstitutional? The City would apparently answer affirmatively, but identifies no facts that would need to be procured antecedent to that determination.  Besides, if as the City insists, there are disputed facts material to these legal questions, the surest way for plaintiff to defeat the Motion for Preliminary Injunction is to offer its view of the facts in a manner that might undercut Salter's ability to show a likelihood of success on the merits.  But the City has not done so, instead relying solely on a conclusory sleight of hand to allude to unspecified factual discrepancies and an unsupported need for preliminary discovery.  That is simply not an adequate ground for pretermitting the Rule

---

[11]     This is particularly true as to Salter's arguments that the Ordinance is facially unconstitutional.  *See generally Café Erotica of Florida, Inc. v. St. Johns County*, 360 F.3d 1274, 1282 (11th Cir. 2004) ("When analyzing a facial challenge, we must analyze the [ordinance] as written.").

65 inquiry or outright denying preliminary injunctive relief to Salter.

Second, the City balks that there is no recent Eleventh Circuit authority affirming entry of a preliminary injunction in a sign ordinance case, implying that the very premise of Salter's motion is invald.  This contention, too, is misplaced.  If the common-law requirements for issuance of a preliminary injunction are satisfied, then there is nothing peculiar about sign ordinance cases that prevents entry of a preliminary injunction in that context.  Municipal ordinances are not entitled to an automatic exemption from Rule 65.  *See generally Summum v. Pleasant Grove City*, --- F.3d ----, 2007 WL 1128876 (10th Cir. Apr. 17, 2007) (ordering entry of preliminary injunction against municipality whose restrictions on speech in public park trammeled plaintiff's First Amendment rights); *Vincenty v. Bloomberg*, 476 F.3d 74 (2nd Cir. 2007) (affirming district court's entry of preliminary injunction prohibiting New York City, on First Amendment grounds, from enforcing ordinances prohibiting sale of aerosol spray paint cans and indelible markers to adults between ages of 18 and 21); *Gold Coast*, 42 F.3d at 1343 (reciting standard preliminary injunction requirements in reviewing request for preliminary injunction against ordinance on First Amendment grounds).  The City offers no principled reason why municipal ordinances should be excluded from the proscriptions of preliminary injunctions if the prerequisites for entry of same are otherwise satisfied.  Simply put, if Salter can clearly demonstrate a substantial likelihood that the Ordinance is unconstitutional in the stated respects, and if Salter is further able to show that the risk of irreparable injury, the balance of harms and the public interest all warrant preliminary injunctive relief, then there would be nothing improper or untoward about preliminarily enjoining the City from enforcing the offending terms of its Ordinance.

The City's objections to the premise of Salter's Motion lacking merit, the Court is left with an opposition brief that unhelpfully fails to mount any substantive rebuttal to plaintiff's showing of its likelihood of success on the merits.  To be clear, it remains plaintiff's burden to prove its entitlement to a preliminary injunction.  A defendant's silence does not necessarily equate to a plaintiff's meeting its burden of proof.  The Court will not automatically find a substantial likelihood of success on the merits simply because the City has neglected to make any effective response; rather, the Court will scrutinize plaintiff's filings to determine whether Salter has clearly established the burden of persuasion on that factor.  That said, the Court will

not undertake unilaterally to formulate, present, and evaluate every argument that the City could have made, but has elected not to make; therefore, the City omits response to this pivotal legal issue at its own risk.[12]

     **B.**     ***Inapplicability of Arbitrary and Capricious Standard of Review.***

     One further matter must be addressed before reaching the substance of Salter's request for entry of preliminary injunction.  Although the Rule 65 standard is firmly established in federal jurisprudence, the City argues that Alabama law requires that the Board of Zoning Adjustment's decision not to grant Salter a variance must be reviewed under an arbitrary and capricious standard.  (Opposition Brief, at 4-5.)  But this contention mixes apples and oranges. The primary issue in this case is not whether the City of Brewton's Board of Zoning Adjustment's denial of Salter's billboard applications was correct under the terms of the Ordinance (a determination which would be made on an "arbitrary and capricious" basis under Alabama law), but is instead whether the Ordinance and accompanying moratorium violate constitutional free speech guarantees.[13]  As to those First Amendment questions, there is no presumption that the City's actions in enacting the Ordinance and moratorium are valid, and no such deference attaches to those decisions.  *See generally Islamic Center of Mississippi, Inc. v.*

---

[12]     *See Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment"); *Morgan v. North Mississippi Medical Center, Inc.*, 403 F. Supp.2d 1115, 1120 (S.D. Ala. 2005) (litigant who fails to rebut arguments propounded by its adversary "adopts this strategy at its peril, inasmuch as this Court will not formulate a party's arguments for it"); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("[i]t is not for the court to manufacture arguments on Plaintiff's behalf").

[13]     It is undisputed that Salter did not present its constitutional arguments to the Board of Zoning Adjustment; however, it could not legally have done so under Alabama law, so the Board's findings (if any) as to the constitutionality of the Ordinance and moratorium would be entitled to no weight in these proceedings.  *See Budget Inn of Daphne, Inc. v. City of Daphne*, 789 So.2d 154, 158 (Ala. 2000) ("A zoning board of adjustment or other such administrative agency cannot entertain a constitutional challenge and would be without authority or power to make a determinative ruling on such a challenge.").

-12-

*City of Starkville, Miss.*, 840 F.2d 293, 299 (5th Cir. 1988) (explaining that, while courts ordinarily accord municipal zoning decisions considerable deference, such deference is not warranted when a zoning plan infringes upon First Amendment rights).  The Court rejects the City's contention to the contrary.[14]

### C.    Request for Preliminary Injunction on the City's Allegedly Wrongful Interpretation of Ordinance.

Salter attempts to show a substantial likelihood of success on the merits with respect to its claim that the City wrongly interpreted the Ordinance as banning all new off-premises signs or billboards.  Plaintiff cannot meet its burden on this claim.  Section 10.775(7) of the Ordinance is directly on point, stating that "No new off-premises signs or billboards will be permitted in any zone, nor shall a permit be issued for any permitted on-premises sign for any premises on which there exists a grandfathered off-premises sign or billboard unless the off-premises sign or billboard is first permanently removed."  *Id.*  On its face, this language lends unequivocal support to the City's stated interpretation of the Ordinance as proscribing the nine new off-premises signs for which Salter sought permits in 2005.

Plaintiff's arguments to the contrary are unavailing.  As an initial matter, Salter insists that the Ordinance must be read as a whole, and that § 10.775(7) conflicts with other provisions therein.[15]  In that regard, Salter relies heavily on §§ 10.713-716 of the Ordinance, which it contends shows that "outdoor advertising signs" are plainly allowed in the City of Brewton.  But this argument conflates two distinct terms, as "outdoor advertising signs" logically could encompass on-premises signs or off-premises signs.  That <u>some</u> outdoor advertising signs may be allowed (which is the most that §§ 10.713-716 can be reasonably construed as stating) does

---

[14]        That said, the Court recognizes that Salter also seeks a preliminary injunction on the ground that the City misinterpreted the Ordinance.  As to that claim, the standard of review may well be arbitrary and capricious, but the Court need not make such a finding given its determination, *infra*, that Salter has failed to show a substantial likelihood of success on the wrongful interpretation theory, even if the City's interpretation is reviewed *de novo*.

[15]        This line of argument follows from the unremarkable proposition that a court determining the plain meaning of an ordinance should examine the ordinance as a whole, rather than focusing on particular provisions in isolation.  *See, e.g., Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1278 (11th Cir. 2005).

not mean that <u>all</u> outdoor advertising signs are allowed.  Those sections do not expressly state that off-premises signs are permitted, but rather impose certain limitations on any outdoor advertising signs that may otherwise be allowed.[16]  Far from contradicting § 10.775(7), these "outdoor advertising sign" provisions are entirely consistent with it, inasmuch as they regulate such signs as are permitted under other aspects of the Ordinance, including § 10.775(7).  Section 10.775(7) makes this link clear by stating that if an existing off-premises billboard is removed or destroyed, "any replacement sign or billboard shall be in conformance with the provisions of this ordinance," which would of course include the restrictions in §§ 10.713-.716.  *Id.*  Thus, §§ 10.713-.716 do not specify that outdoor advertising signs are always allowed; rather, they merely impose certain restrictions to any such signs that are permitted.  As § 10.775(7) acknowledges circumstances in which signs would be built that would be subject to those restrictions on outdoor advertising signs, there is no inconsistency here, and plaintiff's attempts to show otherwise are not substantially likely to prevail.

Next, Salter argues that § 10.775(7) cannot possibly mean what it says because off-premises billboards are not mentioned in § 10.74's catalog of prohibited signs.  Again, plaintiff conjures an illusory incongruity.  Section 10.74 recites several categories of signage that are always forbidden in the City, such as signs painted on fire escapes or utility poles, signs that imitate official traffic control devices, signs that flash or illuminate intermittently, sandwich signs, and signs that produce noise, interfere with communication transmissions, or emit smoke or odors.  (Ordinance, §§ 10.741-.745.)  These categories of signs are always prohibited.  The reason for the omission of off-premises billboards from that section is simple and obvious:  They are <u>not</u> always prohibited.  Existing off-premises billboards are grandfathered in, as stated in § 10.775(7), so Salter's argument mistakenly would construe a prohibition on new off-premises billboards (as described in § 10.775(7)) as a prohibition on all off-premises billboards (which is not set forth anywhere in the Ordinance).  Thus, far from the omission of off-premises billboards

---

[16]     In particular, these sections generally forbid outdoor advertising signs from being placed upon any street or highway right-of-way (§ 10.713); from being located in a manner that impedes the view of a street or highway intersection (§ 10.714); from blocking ingress or egress from a door, window or fire escape (§ 10.715); and from being less than 8 feet above sidewalk level or 15 feet above street level (§ 10.716).

in § 10.74 causing an internal contradiction, said omission is perfectly consistent with § 10.775(7), the section that Salter seeks to undermine.[17]  If anything, Salter would have this Court disregard the plain meaning of § 10.775(7) because § 10.74 is <u>not</u> inconsistent with it, a result which cannot be justified under logic or common sense.

Finally, plaintiff asserts that § 10.775(7) cannot apply to Salter's permit applications because it is limited to the R-A ("Rural Agricultural") zoning district.  Plaintiff's position stems from the fact that § 10.775 is structured as a schedule of permitted sign requirements in tabular form by zoning district, followed by eight numbered subsections.  Between subsections (2) and (3) is a line reading simply "* None specified", which is apparently a reference to asterisks in the R-A lines of the table for sign specifications (maximum area, maximum height, number of faces, etc.).  The asterisk denotes that the Ordinance does not specify any particular size, height or numerical restrictions for signs on property zoned R-A.  Remarkably, Salter asserts that because the asterisk legend is placed where it is, all subsections of § 10.775 following that legend must apply only to R-A property.  But nothing in subsections (3) through (8) even references the R-A zoning district, much less states that they are confined to that district.  To the contrary, several subsections unequivocally contradict Salter's interpretation.  For example, subsection (3) discusses temporary signs on business premises, shopping center premises, subdivisions, mobile home parks, and the like, which premises obviously would not be zoned as "Rural Agricultural."  Subsection (4) likewise addresses temporary signs placed on the premises of new businesses, which is inconsistent with Salter's R-A theory.  Most telling of all is that subsection (7), the very provision at issue here, states that no off-premises signs "will be permitted in any zone," not just the R-A zone.  Rather than suggesting that subsections (3) through (8) are confined to R-A zoning districts, far and away the most sensible interpretation of the placement of the "* None

---

[17]      Imagine the confusion that would ensue had the City followed Salter's suggestion and listed off-premises billboards as a category of prohibited sign under § 10.74.  How could such an absolute prohibition be squared with the language of § 10.775(7), which allows existing off-premises signs to be grandfathered in and even allows replacement off-premises signs to be erected so long as they comply with the other provisions of the Ordinance?  It couldn't.  Thus, Salter's argument would fault § 10.74 for not injecting ambiguity and uncertainty into the regulatory scheme, which is hardly a valid basis for invalidating the City's construction of § 10.775(7).

specified" statement is that it was the product of a simple formatting error in generating the schedule of permitted sign requirements and the accompanying notes.  In short, plaintiff's strained interpretation of § 10.775 is implausible to the extreme and is confuted by the plain language of that section; therefore, it cannot support a finding that Salter is substantially likely to prevail on the merits as to its claim that the City wrongfully interpreted the Ordinance to deny the permits based on an off-premises sign prohibition.

For all of these reasons, it is this Court's finding that plaintiff has failed to carry its burden of proving a substantial likelihood of success on its claim that the City wrongfully interpreted its Ordinance to forbid Salter's requested signage.  Salter having failed to show a substantial likelihood of success on the merits, no preliminary injunction will issue on this claim, and this Court need not consider whether the other prerequisites for preliminary injunctive relief are satisfied.  *See Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8, 15 (1st Cir. 2004) (observing that "likelihood of success is an essential prerequisite for the issuance of a preliminary injunction").

>    **D.**    ***Request for Preliminary Injunction on the Billboard Moratorium.***

Salter's permit applications were apparently denied by the City at least in part because of the June 2005 moratorium.[18]  This moratorium is broader than the Ordinance's ban on new off-premises signs because it appears to cover both new billboards and the repair or replacement of existing billboards.  The City has proffered only fragmentary evidence to explain the purpose of the moratorium, as a City official avers that "We were still concerned with the wind-load requirements and safety issues involved with sign faces becoming airborne.  We were also continuing to consider the possibility of a new sign ordinance."  (King Aff., ¶ 4.)[19]  The City

---

[18]    Salter presents evidence that a City official informed it that the applications were being denied because of the moratorium.  (McCurdy Decl., ¶ 10.)  And the City's opposition brief takes pains to point out that Salter filed its permit applications "with full knowledge of the temporary moratorium," suggesting that such moratorium was indeed a moving force in the denial.  (Opposition Brief, at 3.)

[19]    These sentiments are echoed in the Affidavit of Pete Diurno, a City official who explains that the moratorium "was due, in part, to [his] concerns regarding safety, new wind-load requirements, and the work underway towards the consideration of a new ordinance."  (Diurno Aff., ¶ 5.)

-16-

offers neither evidence nor argument that the moratorium has since expired or been dissolved or repealed, or that a new sign ordinance has been implemented.  Thus, all indications are that the moratorium remains in effect today.

           1.      *Substantial Likelihood of Success on the Merits.*

The Supreme Court has observed that moratoria are not *per se* unconstitutional, but that they are instead properly viewed as "an essential tool of successful development."  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 338, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).  A moratorium on all billboard repair or construction is properly viewed as a government regulation on commercial speech, the constitutionality of which must be evaluated under the following four-part test: (1) whether the commercial speech concerns lawful activity and is not misleading, so as to be entitled to First Amendment protection; (2) whether the asserted governmental interest is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) "whether it is not more extensive than is necessary to serve that interest."  *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[20]  More recently, the Supreme Court has characterized the second through fourth *Central Hudson* criteria as being "whether the State's interests in proscribing [commercial speech] are substantial, whether the challenged regulation advances these interests in a direct and material way, and whether the extent of the restriction on protected speech is in reasonable proportion to the interests served."  *Edenfield v. Fane*, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993).

The advertising billboards at issue in these proceedings are plainly entitled to First Amendment protection, so there is no doubt that that element is satisfied.  But all appearances at this preliminary stage are that the City has a substantial interest in safeguarding its citizens from wind-damaged signs and their attendant hazards to persons and property, and that a temporary moratorium on billboard construction to allow the City to study these safety issues is reasonably in furtherance of that legitimate objective, so that the second and third *Central Hudson* elements

---

[20]      In applying the *Central Hudson* test to the City of Brewton's moratorium, the Court agrees with and adopts the approach utilized in *Trinity Outdoor, L.L.C. v. Oconee County, Ga.*, 2003 WL 25301942, *7 (M.D. Ga. May 21, 2003), a billboard case in which the constitutionality of a moratorium under the First Amendment was at issue.

are also present.  The critical question, then, is whether an ongoing, indefinite moratorium (presently at 22 months and counting) is in reasonable proportion to the governmental interests being served.  At this preliminary stage, and with no explanation by the City for the prolonged duration of the moratorium, the Court finds it substantially likely that this question would be answered in the negative.   It is difficult to fathom circumstances under which the City would legitimately need in excess of 22 months to re-examine the wind-load requirements and other safety features of its Ordinance, and to ascertain whether a new ordinance would be beneficial to public safety.  As it appears that the moratorium has extended far longer than reasonably necessary to promote the City's interest in studying the safety aspects of billboard specifications in the wake of Hurricane Ivan, plaintiff has shown a substantial likelihood of success on the merits as to its claim that the City's moratorium violates the First Amendment.  *See Howard v. City of Jacksonville*, 109 F. Supp.2d 1360, 1364 (M.D. Fla. 2000) (120-day moratorium on issuance of licenses for adult entertainment businesses was unconstitutional in that it was longer than necessary to meet the asserted government interest in correcting / improving the licensing ordinance); *compare Bronco's Entertainment, Ltd. v. Charter Tp. of Van Buren*, 421 F.3d 440, 453 (6th Cir. 2005) (182-day moratorium for updating zoning regulations and licensing scheme did not violate First Amendment where it "was generally applicable, was not intended to suppress speech, and was of a reasonably short duration").

> 2.    *Irreparable Harm.*

With respect to irreparable harm, the Eleventh Circuit has emphasized that "[a] showing of irreparable injury is the *sine qua non* of injunctive relief" and that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  *Siegel*, 234 F.3d at 1176 (citations omitted).  To satisfy plaintiff's burden of proof, the threat of harm must be irreparable; indeed, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983); *see also Faculty Senate of Florida Int'l University v. Winn*, --- F. Supp.2d ----, 2007 WL 485970, *6 (S.D. Fla. Feb. 8, 2007) ("Irreparable harm is injury for which a monetary award cannot be adequate compensation.") (citation omitted).

The City disputes whether Salter can show irreparable harm arising from the enforcement

-18-

of the moratorium against it, arguing that Salter's delay in filing its Motion for Preliminary Injunction and the adequacy of monetary relief militate against an irreparable harm finding here. (Opposition Brief, at 16-20.)  In so arguing, however, the City overlooks binding authority recognizing that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citation omitted); *see also Blue Moon Entertainment, LLC v. City of Bates City, Mo.*, 441 F.3d 561, 565 (8th Cir. 2006) ("The loss of First Amendment freedoms, even for the period required to litigate a facial challenge, may constitute an irreparable injury."); *Bl(a)ck Tea Society*, 378 F.3d at 15 ("A burden on protected speech always causes some degree of irreparable harm.").  The *City of Trussville* court found that a categorical bar of noncommercial speech in a billboard ordinance encumbers free speech in a manner that cannot be cured by monetary damages.  *See City of Trussville*, 458 F.3d at 1272.  The same conclusion would apply to First Amendment violations infringing upon commercial speech.  *See, e.g., Summum*, 2007 WL 1128876, at *8 ("we have assumed irreparable injury when plaintiffs are deprived of their commercial speech rights").  On that basis, plaintiff has made a sufficient showing of irreparable harm if it is subject to continued enforcement of the moratorium.

       3.      *The Remaining Rule 65 Factors.*

The third requirement for injunctive relief is that "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party."  *Siegel*, 234 F.3d at 1176.  The City argues that this balancing requirement is not satisfied here, couching the relevant interests as being Salter's interest in avoiding a possible temporary loss of income, on the one hand, and the City's interest in protecting citizens from endangerment at the hands of the continuing threat of hurricanes and other strong storms.  (Opposition Brief, at 21.)  This characterization greatly misstates the interests at stake.  Viewed correctly, the balance is between Salter's interest in avoiding irreparable harm via operation of the moratorium, and the City's interest in enforcing an indefinite moratorium that bears no reasonable proportionality to the government interest it was purportedly implemented to promote.  Thus couched, the weighing of harms clearly militates in favor of granting preliminary injunctive relief.  *See City of Trussville*, 458 F.3d at 1272 (third requirement for injunctive relief satisfied because "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the city

-19-

has no legitimate interest in enforcing an unconstitutional ordinance").

The fourth and final requirement for injunctive relief is that "if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176.  The City argues in conclusory terms that a preliminary injunction will harm the interests of the citizens of the City of Brewton.  (Opposition Brief, at 21-22.)  This claim is meritless, as the citizens of Brewton can have no legitimate interest in enforcing an indefinite moratorium that is substantially likely to violate the First Amendment.  *See City of Trussville*, 458 F.3d at 1272 (injunctive relief "plainly is not adverse to the public interest" because "[t]he public has no interest in enforcing an unconstitutional ordinance").  This factor, too, favors a grant of preliminary injunctive relief.

For all of these reasons, the Court finds that Salter's Motion for Preliminary Injunctive Relief is due to be **granted** with respect to enforcement of the moratorium on all signs in the City of Brewton, and the City will be **preliminarily enjoined** from enforcing same.

### E.   *Request for Preliminary Injunction on Ordinance's Prohibition of New Off-Premises Billboards.*

Salter also seeks a preliminary injunction to enjoin the City from enforcing the prohibition on new off-premises signs or billboards set forth in § 10.775(7) of the Ordinance.

The first question in assessing plaintiff's likelihood of success on the merits in its First Amendment attack on the off-premises sign prohibition is whether that speech regulates noncommercial speech in addition to commercial speech.  *See City of Trussville*, 458 F.3d 1261, 1269 (11th Cir. 2006) ("The Supreme Court has afforded commercial and noncommercial speech different treatment under the First Amendment.").  On its face, § 10.775(7) does not regulate noncommercial speech, but is instead confined to commercial speech.  Indeed, by its terms, this provision applies only to "off-premises signs or billboards," which are further defined as "[a]ny off-premises or off-site sign advertising an establishment, merchandise, product, service or entertainment, etc., which is not sold, provided, manufactured or furnished on the property in which said sign is located."  (Plaintiff's Exh. D, at 9.)  Nonetheless, Salter insists that this provision "expressly includes noncommercial messages within the definition of off-premise signs and then (purportedly) completely bans such signs."  (Plaintiff's Brief (doc. 7), at 19.)  This argument is in no way unique to Salter in this case; to the contrary, plaintiffs in this Circuit have routinely made similar contentions with respect to similar off-premises sign bans.  Such

-20-

arguments have routinely failed.  For example, in *Southlake Property Associates, Ltd. v. City of Morrow, Ga.*, 112 F.3d 1114 (11th Cir. 1997), the city banned off-site billboards in a regulation similarly worded to that at issue here.[21]  The Eleventh Circuit concluded that this ordinance imposed no restraint on noncommercial speech because "[t]he definition of billboard as an offsite advertising sign does not include noncommercial speech as such speech is always onsite." *Id.* at 1119.  In *Coral Springs Street Systems v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004), the Eleventh Circuit revisited and reaffirmed the vitality of the *Southlake* holding, explaining that "according to the law of this Circuit, noncommercial messages are by definition onsite signs and therefore certainly not treated unfavorably compared with commercial signs" in the context of an off-site ban.  *Coral Springs*, 371 F.3d at 1344; *see also Lockridge v. City of Oldsmar, Fla.*, --- F. Supp.2d ----, 2007 WL 613826, *10 (M.D. Fla. Feb. 27, 2007) (off-site billboard ban "did not favor commercial over noncommercial speech because the prohibitions on billboards did not apply to noncommercial signs"); *Action Outdoor Advertising JV, L.L.C. v. Town of Shalimar, Fla.*, 377 F. Supp.2d 1178, 1193 (N.D. Fla. 2005) (determining that "given the Eleventh Circuit's clear instruction that all noncommercial speech is inherently onsite, the phrase further defining a billboard as providing information concerning any activity 'that takes place on property other than that where the sign is located' eliminates noncommercial speech from the scope of the definition's reach").  Simply put, "Eleventh Circuit precedent is clear that all noncommercial speech is onsite in nature and thus the prohibition against billboards does not implicate noncommercial signs." *Town of Shalimar*, 377 F. Supp.2d at 1195.

As a matter of law, then, the City's prohibition on off-premises billboards does not and cannot reach noncommercial speech.  Accordingly, Salter's assertion that the ban on off-premises signs regulates both commercial and noncommercial speech and that it somehow impermissibly favors commercial speech over noncommercial speech – an oft-attempted and oft-rejected gambit by interested plaintiffs in these kinds of cases – once again misses the mark

---

[21]     The *City of Morrow* regulation defined a billboard as an "advertising sign or a sign which advertises a commodity, product, service, activity or any other person, place or thing, which is not located, found or sold on the premises upon which such sign is located."  112 F.3d at 1115.  This definition is markedly similar to the City of Brewton's billboard definition.

here.[22]  This category of arguments being squarely and unambiguously foreclosed by a line of binding precedent, Salter's assertion that it has a substantial likelihood of success on the merits with respect to its argument that the off-site ban unconstitutionally regulates noncommercial speech is unfounded.[23]

The prohibition on off-premises signs being limited to commercial speech under the foregoing reasoning, review of the constitutionality of that provision is governed by the four-factor *Central Hudson* test described *supra*.  *See This That and the Other Gift and Tobacco, Inc. v. Cobb County, Ga.*, 439 F.3d 1275, 1278 (11th Cir. 2006) ("Courts use the four-prong test in *Central Hudson* to determine if commercial speech is protected by the First Amendment.").[24]  At

---

[22]     Plaintiff's briefs on the Motion for Preliminary Injunction argue emphatically that the off-premises sign prohibition regulates noncommercial speech despite the existence of binding Eleventh Circuit precedent (*Southlake*, *Coral Springs*) to the contrary.  Given plaintiff's counsel's extensive experience in litigating billboard cases in the Eleventh Circuit in recent years, including multiple cases whose outcomes turn on *Southlake* and *Coral Springs*, it would be most surprising if counsel were unaware of both the existence of *Southlake* and *Coral Springs*, and the fact that they are directly adverse to the position he is advocating here.  If he were aware of these cases, then it is unclear how plaintiff's counsel's failure to reference these decisions can be squared with his ethical duty of candor toward the tribunal under Rule 3.3 of the Alabama Rules of Professional Conduct, the comment to which explains that a lawyer "is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities."  (*Id.*)

[23]     To the extent that Salter relies on *City of Trussville* for the proposition that off-premises bans unconstitutionally favor commercial speech over noncommercial speech (Plaintiff's Brief, at 20), such reliance is misplaced.  In *City of Trussville*, the panel found an ordinance unconstitutional because billboards (the largest signs permitted by the ordinance) were confined to commercial speech.  458 F.3d at 1270.  Here, by contrast, Salter does not argue, and the City of Brewton's Ordinance does not appear to state, any discrepancy in size allowances between noncommercial signs and commercial signs.  In fact, *City of Trussville* supports this Court's finding that Salter lacks a substantial likelihood of success on its contention that the off-site ban applies to noncommercial speech, inasmuch as the *City of Trussville* court found that a regulation applying to any "off-premise sign which directs attention to a business, commodity, service, or entertainment, sold or offered for sale at a location other than the premises on which said sign is located" was "by definition limited only to commercial messages."  458 F.3d at 1270.  That conclusion is fatal to Salter's argument that the City of Brewton's off-premises sign ban regulates noncommercial speech.

[24]     *See also Granite State Outdoor Advertising, Inc. v. Cobb County, GA*, 193 Fed.Appx. 900, 904 (11th Cir. Aug. 17, 2006) ("Because the prohibition on 'off-premises outdoor

the risk of redundancy, that test requires a court to determine (1) whether the speech concerns lawful activity and is not misleading; (2) whether the regulation serves a substantial governmental interest; (3) whether the regulation directly and materially advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to serve that interest. *Id.*

There is no reason to doubt that the speech in which Salter seeks to engage constitutes lawful activity and is not misleading, such that it lies within the purview of the First Amendment.  With respect to the governmental interest, the Ordinance states that its purpose is "to ensure safe construction, light, air, and open space, to reduce hazards at intersections, to promote public safety by eliminating confusing, distracting and unsafe signs, to prevent the accumulation of trash, to protect property values of the entire community, and to require a positive visual environment in harmony with the natural beauty of Brewton."  (Ordinance, § 10.7.)  As the Supreme Court found in a seminal First Amendment case relating to billboards, there can be no "substantial doubt that the twin goals that the ordinance seeks to further – traffic safety and the appearance of the city – are substantial governmental goals."  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion); *see also Town of Shalimar*, 377 F. Supp.2d at 1190 ("following *Metromedia* courts in the Eleventh Circuit have uniformly found the promotion of safety or aesthetics to constitute substantial government interests").  Moreover, there can be no serious question that the offsite billboard ban directly and materially advances these interests; indeed, a plurality of the *Metromedia* Court found that "the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics.  This is not altered by the fact that the ordinance is underinclusive because it permits onsite advertising."  453 U.S. at 511; *see also Town of Shalimar*, 377 F. Supp.2d at 1191 (third *Central Hudson* prong satisfied where record contains no evidence suggesting that ordinance fails to directly advance municipality's legitimate goals, such that there is no basis for court to disagree with judgment of defendant's local lawmakers).

advertising signs' extends only to commercial speech, we review the challenge to these provisions under the four-part test articulated by the Supreme Court in *Central Hudson Gas*"); *Lockridge*, 2007 WL 613826, at *10 (explaining that *Central Hudson* test is used to determine validity of government restrictions on commercial speech).

In the face of this authority, there is no substantial likelihood that Salter will succeed on the second and third prongs of the *Central Hudson* analysis.

With respect to the fourth factor, *Central Hudson*'s proportionality inquiry, once again the *Metromedia* plurality opinion is instructive, as it states as follows:

> "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.  The city has gone no further than necessary in seeking to meet its ends.  Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs."

453 U.S. at 508.  Courts in this Circuit have hewed to the *Metromedia* analysis in finding similar bans on off-premises billboards to satisfy the *Central Hudson* test for constitutionality.  *See Granite State Outdoor Advertising, Inc. v. Cobb County, GA*, 193 Fed.Appx. 900, 904-05 (11th Cir. Aug. 17, 2006) ("*Cobb County*") (prohibition on off-premises outdoor advertising signs passes muster under all four prongs of *Central Hudson*, using *Metromedia* analysis); *Lockridge*, 2007 WL 613826, at *10-11 (similar); *Town of Shalimar*, 377 F. Supp.2d at 1192 (similar).

In sum, then, this Court finds that it is not substantially likely that Salter will be able to establish that the Ordinance's prohibition of new off-premises billboards in the Ordinance implicates noncommercial speech.  The challenged section of the Ordinance being confined to commercial speech, the Court further finds that Salter is not substantially likely to be able to establish that such prohibition is unconstitutional under *Central Hudson* and *Metromedia*.  Accordingly, Salter has failed to carry its burden of clearly showing a substantial likelihood of success on the merits as to its claim that the prohibition on new off-premises billboards violates the First Amendment.  No preliminary injunction will issue as to that cause of action.

F. **Request for Preliminary Injunction on Other Aspects of Ordinance.**

1. *Background.*

In addition to seeking a preliminary injunction as to the moratorium and the Ordinance's prohibition on new off-premises billboards, Salter seeks to enjoin enforcement of assorted other aspects of the Ordinance that it deems constitutionally problematic.  Specifically, at this Rule 65 juncture, Salter asks the Court to enjoin the City from enforcing the Ordinance on the following bases: (i) that the Ordinance's exemptions (covering topics like official traffic signs, temporary

-24-

signs and decorations for holidays and grand openings, political signs that comport with certain regulatory controls, and certain types of flags) render the Ordinance a content-based regulation that flunks strict scrutiny review; (ii) that the Ordinance unconstitutionally imposes more stringent restrictions on political signs than on commercial signs; (iii) that the permitting requirements of the Ordinance lack required procedural safeguards, such as setting specific time limits on the City's decision-making process and allowing for prompt judicial review of adverse permitting decisions; and (iv) that the Ordinance affords unbridled discretion to City decisionmakers as to permit applications.

There is no allegation and no evidence that the nine permitting decisions underlying the Motion for Preliminary Injunction were prompted by any of these purported infirmities, or that any of those features of the Ordinance were the driving force behind the permit denials on which this action is predicated. For that reason, before (and in certain respects, in lieu of) reaching the traditional preliminary injunction analysis, the City devotes considerable attention in its brief to arguing that Salter lacks standing to contest these ancillary provisions of the Ordinance. If the Court understands it correctly, the City's position is that because Salter's sign applications were denied on the grounds of the moratorium and the Ordinance's prohibition on new off-premises signs, Salter has no standing to challenge any aspect of the Ordinance other than the off-premises provision. (Opposition Brief, at 13.) On that basis, the City decries Salter's "sweeping attack on several provisions that do not apply to it and on the ordinance as a whole under the overbreadth doctrine" as an abuse of Article III standing principles. (*Id.*)[25]

> 2.    *Legal Prerequisites for Standing.*

"Standing is the threshold question in every federal case, determining the power of the Court to entertain the suit." *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257,

---

[25]       The City does not argue, and could not reasonably argue, that Salter lacks standing to challenge the moratorium or the Ordinance's prohibition on new off-premises signs, which were the stated reasons for denial of Salter's nine permit applications. Thus, the City's standing objection is confined to Salter's efforts to invalidate other aspects of the Ordinance. There clearly being standing for Salter to challenge the moratorium and the ban on new off-premises signs, and the City not having interposed a standing objection to those claims, this Order will not recite a *pro forma* analysis of the *Defenders of Wildlife* factors and the accompanying prudential considerations with respect to each of those claims.

1269 (11th Cir. 2006) (citation omitted).  The doctrine of standing includes both "irreducible constitutional requirements and prudential considerations."  *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990); *see also City of Trussville*, 458 F.3d at 1266 ("In addition to the constitutional requirements, there are also prudential standing principles ....").  The irreducible constitutional minimum elements of standing, as propounded in the seminal case of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), are that a plaintiff must show each of the following: "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision."  *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003) ("*City of Clearwater*").

If Salter is able to satisfy these constitutional requirements, then it must also comport with prudential standing principles, and in particular the requirement that "a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court." *City of Trussville*, 458 F.3d at 1266.  This prudential requirement is subject to an overbreadth exception, which "simply allows a plaintiff to bring a facial challenge to a provision of law that caused her injury, regardless of whether the provision's regulation of her conduct in particular was constitutional."  *Id.* at 1267.  This Circuit's overbreadth jurisprudence stresses that "a plaintiff may bring an overbreadth challenge to only those provisions of a law or ordinance that affect its activities" and that "the overbreadth doctrine does not change the statutes or provisions of an ordinance a plaintiff may challenge; she can only contest those which actually caused her injury" under constitutional standing principles.  *Id.*  Stated differently, the law of this Circuit is crystal clear that Salter must satisfy the constitutional standing prerequisites for <u>every</u> provision of the Ordinance that it challenges here.  *See CAMP*, 451 F.3d at 1273 (conclusively rejecting proposition "that injury under one provision is sufficient to confer standing on a plaintiff to challenge all provisions of an allegedly unconstitutional ordinance" and explaining that a plaintiff must "establish injury in fact as to each provision, even under the overbreadth doctrine").

### 3.      *No Injury in Fact as to Political Signs.*

The fundamental standing problem that Salter encounters with respect to its challenge to

-26-

the aspects of the Ordinance concerning political signs is that it has not shown a substantial likelihood that the restrictions on political signs expose it to an injury in fact, one that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 2007 WL 677729, *23 n.16 (11th Cir. Mar. 7, 2007). With respect to the injury-in-fact requirement, the Eleventh Circuit has opined that "[w]hile this requirement is hard to define precisely, we know that the plaintiff must at least claim to *personally* suffer some harm." *City of Clearwater*, 351 F.3d at 1116.

Here, there is no indication that any of the nine signs for which Salter made application were designated for political messages. Salter does not specialize in political signs; to the contrary, its evidence is that Salter's signs include advertisements for "businesses, organizations, special events, charitable causes, churches, hospitals, schools, and political and ideological opinions." (Crawley Decl., ¶ 5.) At most, Salter's paltry showing on this point is that on occasion (no evidence as to how frequent) in its 50 year history it has posted political signs, and that at some indeterminate time in the future (again, no evidence as to when) it may post political signs again, with no indication that it has ever posted or will ever post political signs in the City of Brewton, as opposed to other locales in its extensive territory of operations.[26] From the record presented by Salter, there is no indication as to whether it is reasonably likely that Salter would desire to post a political sign in the City of Brewton sometime in the next week, the next month, the next year, or the next five years. As such, any harm that Salter may incur from unconstitutional restrictions in the political sign aspects of the Ordinance is far too remote and speculative at this time, on this record, to comport with the irreducible constitutional minimum requirement that an injury in fact is needed for Article III standing to exist. *See CAMP*, 451 F.3d

---

[26] In its reply brief, Salter attempts to bolster its political signs business by stating that it is "an entity that often displays political messages on its signs in the City." (Reply Brief (doc. 16, at 6.) But the record is devoid of any evidence that such is the case, and the unsupported statements of counsel cannot be credited in the standing inquiry. *See CAMP*, 451 F.3d at 1276 ("Standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.") (citations omitted). As such, the naked representation of plaintiff's counsel that Salter "often" posts political billboards in the City of Brewton substantially embellishes the evidence of record and cannot confer standing on Salter to challenge the political sign aspects of the Ordinance.

at 1276 (finding that plaintiff lacked standing to challenge two provisions of ordinance where it had presented no evidence that those provisions apply to the permits it seeks and the record did not evidence actual or imminent injury from those provisions); *Prime Media, Inc. v. City of Brentwood*, 474 F.3d 332, 339 (6th Cir. 2007) (finding plaintiff's claims relating to certain provisions of sign ordinance to be "conjectural or hypothetical," rather than "palpable and distinct," such that they were insufficient to establish an injury in fact).  Accordingly, it is the finding of this Court that the record at present is insufficient to establish that Salter possesses standing to contest the Ordinance's restrictions on political signs because there is no evidence that such restrictions are imminently likely to affect its activities.[27]  For that reason, no preliminary injunctive relief will be awarded to Salter with respect to the political sign provisions of the Ordinance.

       *4.*    *No Redressability as to Objections to Exemptions, Lack of Procedural Safeguards, and Excessive Discretion.*

As for Salter's remaining objections to sundry aspects of the Ordinance (*e.g.*, exemptions, lack of procedural safeguards, unfettered discretion to City officials), plaintiff's efforts to show standing to bring each of those claims are foreclosed by a recent line of precedent in this Circuit culminating in the newly decided *KH Outdoor, L.L.C. v. Clay County, Fla.*, --- F.3d ----, 2007 WL 925282 (11th Cir. Mar. 29, 2007) ("*Clay County*").

In this formidable and burgeoning line of cases, courts have deemed the injury complained of not to be redressible for standing purposes because even if the plaintiff succeeded

---

[27]      That said, the Court notes that defendant has not requested that plaintiff's claims be dismissed for want of standing, but has instead used standing as a lever to oppose the granting of preliminary injunctive relief to Salter.  Moreover, the Court recognizes that this case is at a very early stage, and that a plaintiff need not prove standing until "the final stage of litigation." *CAMP*, 451 F.3d at 1269.  Accordingly, the undersigned does not find today that there is no possibility that Salter can establish standing to contest the Ordinance's political sign restrictions, nor does it dismiss such claims.  Rather, the Court's finding is that plaintiff is not entitled to a preliminary injunction specifically directed at the political sign restrictions set forth in the Ordinance because plaintiff has not demonstrated a substantial likelihood that it will be able to prove standing to pursue such a claim in this action.  *See generally Securities and Exchange Commission v. ETS Payphones, Inc.*, 408 F.3d 727, 731 (11th Cir. 2005) (when preliminary injunction is challenged on jurisdictional basis, plaintiff need only establish a reasonable probability of ultimate success on the question of jurisdiction when action is tried on merits).

in showing the objected-to provisions of the Ordinance to be unconstitutional, some other provision would preclude it from being able to erect billboards. *See Clay County*, 2007 WL 925282, at \*4 (concluding that any injury that billboard company actually suffered from challenged ordinance provisions is not redressible because plaintiff's applications failed to meet requirements of other statutes and regulations not challenged); *Coral Springs*, 371 F.3d at 1343 (declining to review certain challenged provisions of a sign ordinance that are unrelated to the provisions actually responsible for the denial of the permit application, such that review of them would have utterly no impact on outcome of the case); *Tinsley Media, LLC v. Pickens County, GA*, 2006 WL 2917561, \*6 (11th Cir. Oct. 12, 2006) ("The injury, in this circumstance, is the prohibition of the intended form of expression of Tinsley Media, i.e., the erection of advertising billboards. Tinsley Media fails to satisfy the "redressability" requirement of standing because, even if we declared unconstitutional one or more of the exemptions, the striking of those exemptions would not in any way benefit the proposed forms of expression of Tinsley Media. ... The permitting requirements for billboards would remain."); *Granite State Outdoor Advertising, Inc. v. City of Fort Lauderdale*, 194 Fed.Appx. 754, 758 (11th Cir. Sept. 6, 2006) ("*City of Fort Lauderdale*") (finding that where outdoor advertiser was categorically prohibited from its activity of outdoor advertising, it lacked standing to challenge ordinance's restrictions on political signs and the ordinance's exemptions because advertiser's injury of being denied permits could not be redressed by striking these provisions from the ordinance as unconstitutional, such that there was no point in evaluating plaintiff's objections to those exemptions); *Cobb County*, 193 Fed.Appx. at 906 (where ordinance categorically banned all off-premises outdoor advertising, plaintiff outdoor advertiser lacked standing to object to aspects of ordinance addressing temporary signs, exemptions, and the like because even if these provisions were declared unconstitutional, the ordinance would continue to prohibit off-premises outdoor advertising, which is the plaintiff's only intended activity, such that its injury would not be redressed by a favorable decision); *Lockridge*, 2007 WL 613826, at \*6 ("Plaintiff has failed to show that he has standing to challenge the alleged lack of procedural safeguards because he has not alleged in his complaint or presented evidence that he intended to construct signs that would

-29-

otherwise be permitted.").[28]

A typical, representative exposition of the reasoning animating this substantial line of authority was set forth in *Advantage Advertising, LLC v. City of Hoover, Ala.*, 200 Fed.Appx. 831 (11th Cir. Aug. 11, 2006). Significantly, the *City of Hoover* ordinance included a provision banning off-premise billboards, which both the district court and the Eleventh Circuit concluded was not violative of the First Amendment. When the sign company attempted to challenge other ordinance provisions that allegedly granted unbridled discretion to city officials or constituted unconstitutional prior restraints of speech, the *City of Hoover* found no standing, reasoning as follows:

> "Although ADvantage challenged the lack of several procedural safeguards that allegedly grant unbridled discretion to city officials, ... ADvantage was not subject to those provisions because off-premise signs are never permitted under the ordinance. ... ADvantage did not allege in its complaint or present evidence that it intended to construct signs that might be permitted under the statute, which would subject ADvantage to the lack of procedural safeguards. ADvantage lacks standing to challenge the lack of procedural safeguards."

*City of Hoover*, 200 Fed.Appx. at 835. Similarly, in *City of Fort Lauderdale*, the Court reasoned that the sign company lacked standing to challenge the constitutionality of a sign ordinance's exemptions for flags, holiday decorations, and the like, inasmuch as "[t]he injury that Granite State suffered from being denied a permit under the categorical ban on billboards would not be redressed by a challenge to this provision. ... Granite State was injured because it was not permitted to erect billboards. ... If the exemptions that it challenges were struck from the statute as unconstitutional, Granite State still would not be able to erect a billboard." *City of Fort Lauderdale*, 194 Fed.Appx. at 758 (citations omitted).[29]

---

[28]    Remarkably, despite the fact that he was counsel of record for the sign companies in many of these cases that are directly adverse to his position here, plaintiff's counsel neglects to mention any of them in his arguments concerning standing. This omission is of some concern given plaintiff's counsel's ethical obligation of candor to the tribunal in positing legal arguments and his failure to disclose these adverse authorities despite his personal participation in many of these cases and, presumably, his actual knowledge of these decisions.

[29]    Against this wall of precedent, Salter would apparently lean on *City of Trussville*, but that decision is plainly distinguishable and therefore cannot support the weight that plaintiff would place on it. In *City of Trussville*, the Eleventh Circuit allowed a billboard company to

-30-

The bottom line is this: Salter suffers an injury in that it cannot erect new off-premises billboards in the City of Brewton.  Even if could show a substantial likelihood of success on all of these other challenges to the Ordinance concerning its exemptions, unbridled discretion, and want of procedural safeguards, Salter would remain unable to erect new off-premises billboards in the City of Brewton because it has not shown a substantial likelihood of success on its claim that the prohibition on new off-premises billboards is unconstitutional.  Accordingly, pursuant to the uniform line of Circuit authority addressing this precise issue, the Court finds that there would be no point in evaluating Salter's objections to these provisions, because any injury these provisions may be causing Salter is not redressable.  *See Coral Springs*, 371 F.3d at 1349 (declining to decide constitutionality of remaining challenged portions of ordinance because declaring them unconstitutional "would not make a whit of difference to Coral Springs; it would not have a right to a sign permit whether these provisions ... are valid or not"); *Harp Advertising Illinois, Inc., v. Village of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993) ("Harp suffers an injury (it can't erect the proposed billboard), but winning the case will not alter that situation.").  Salter has not made a substantial showing that its claims that the ordinance unconstitutionally contains certain exemptions, vests unbridled discretion in decisionmakers, and lacks procedural safeguards are redressable.[30]  It not appearing substantially likely that it has standing to pursue those claims at this juncture, Salter will not be granted preliminary injunctive relief as to any of these claims.

---

challenge both a restriction (not a prohibition) on commercial signs and the portion of the ordinance supplying the basic definitional structure for the challenged section, as well as the plaintiff's contention that the ordinance discriminated noncommercial speech by restricting the largest size of sign permitted to commercial messages only.  458 F.3d at 1267-68.  Unlike this case and the myriad authorities cited above, however, *City of Trussville* was not a case in which a valid, enforceable ban on billboards effectively mooted any discussion about the constitutional status of other, superfluous portions of the Ordinance. As such, Salter's position is not materially bolstered by *City of Trussville*.

[30]     The same reasoning would also preclude consideration of Salter's claims concerning the exemption for political signs, even if those claims did pass muster under an injury-in-fact analysis.

**IV.     Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Defendant's Motion to Stay Consideration of Plaintiff's Motion for Preliminary Injunction (doc. 11) is **denied**.

2.      Plaintiff's Motion for Preliminary Injunction (doc. 6) is **granted in part, and denied in part**.  The Motion is **granted** with respect to the post-Hurricane Ivan moratorium on billboards, and the City of Brewton is hereby **preliminarily enjoined** from enforcing that moratorium.  The Motion is **denied** in all other respects.

3.      Review of the court file reflects that defendant has, for unknown reasons, failed to file an answer or other responsive pleading under Rule 12, Fed.R.Civ.P., even though its answer was due by no later than April 3, 2007.  Defendant is **ordered** to remedy this defect on or before **May 7, 2007.**

DONE and ORDERED this 26th day of April, 2007.

                                                  s/ WILLIAM H. STEELE
                                                  UNITED STATES DISTRICT JUDGE